UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
JAMES K., on behalf of        :   Civ. No. 3:21CV00639(SALM)
DAWN K.                       :
                              :
v.                            :
                              :
COMMISSIONER OF THE SOCIAL    :   July 18, 2022
SECURITY ADMINISTRATION[1]    :
                              :
------------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff James K. ("plaintiff") brings this appeal on behalf of his deceased wife, Dawn K. (the "claimant"), under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying the claimant's

---

[1] Plaintiff has named Andrew M. Saul, now the former Commissioner of the Social Security Administration, as defendant. Claims seeking judicial review of a final agency decision are filed against the Commissioner in his or her official capacity; as a result, the particular individual currently serving as Commissioner is of no import. See Fed. R. Civ. P. 17(d) ("A public officer who ... is sued in an official capacity may be designated by official title rather than by name[.]"); 42 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). Accordingly, the Clerk of the Court is directed to update the docket to name the Commissioner of the Social Security Administration as the defendant. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

application for Disability Insurance Benefits ("DIB").[2] Plaintiff has filed a motion "for an Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing." [Doc. #22]. Defendant moves for an Order Affirming the Decision of the Commissioner. [Doc. #28].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing [**Doc. #22**] is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #28**] is **GRANTED.**

I.    <u>**PROCEDURAL HISTORY**</u>[3]

The claimant filed an application for DIB on July 2, 2018, alleging disability beginning January 21, 2017. <u>See</u> Certified

---

[2] The Social Security Act expressly provides: "If an individual dies before any payment due [her] under this subchapter is completed, payment of the amount due ... shall be made ... to the person, if any, who is determined by the Commissioner of Social Security to be the surviving spouse of the deceased individual and who either (i) was living in the same household with the deceased at the time of [her] death or (ii) was, for the month in which the deceased individual died, entitled to a monthly benefit on the basis of the same wages and self-employment income as was the deceased individual[.]" 42 U.S.C. §404(d)(1). Defendant does not dispute that plaintiff meets these requirements. Accordingly, the Court finds that plaintiff is a proper party to this action.

[3] In compliance with the Standing Scheduling Order, plaintiff filed a Statement of Material Facts, titled "Plaintiff's Medical Chronology," Doc. #22-2, to which defendant filed a "Response to Plaintiff's Statement of Facts." Doc. #28-2.

Transcript of the Administrative Record, Doc. #17, compiled on August 7, 2021, (hereinafter "Tr.") at 11, 87, 106.[4] The claimant's application was denied initially on September 20, 2018, see Tr. 11, 87, 127, and upon reconsideration on January 31, 2019. See Tr. 11, 106.

The claimant died on March 18, 2019. See Tr. 143. Plaintiff -- the claimant's widower -- "subsequently filed a Notice Regarding Substitution of Party upon Death of Claimant." Tr. 11; see also Tr. 142-43.

On January 23, 2020, plaintiff, represented by Attorney Mark Wawer, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Matthew Kuperstein. See generally Tr. 51-86. Vocational Expert ("VE") Larry Takki appeared and testified by telephone at the hearing. See Tr. 53, 79-84, 333.

On May 13, 2020, the ALJ issued a partially favorable decision, finding that "the claimant had been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on August 8, 2018 through her date of death on March 18, 2019, but not for any period of time from January 21, 2017 through August 7, 2018." Tr. 24. On December 9, 2020, the Appeals

---

[4] The Application Summary reflects a date of July 3, 2018. See Tr. 222. However, elsewhere the record reflects that the claimant filed her application on July 2, 2018. See Tr. 11, 87, 106. This discrepancy does not affect the Court's analysis.

Council denied plaintiff's request for review, thereby making the ALJ's May 13, 2020, decision the final decision of the Commissioner. See Tr. 1-6. This case is now ripe for review under 42 U.S.C. §405(g).

II.   **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. "First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard. Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999) (citations omitted). Substantial evidence is evidence that "'a reasonable mind might accept as adequate to support a conclusion[;]'" it is "'more than a mere scintilla.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)). The reviewing court's "responsibility is always to ensure that a claim has been fairly evaluated[.]" Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

"The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to apply the law correctly." Poole v. Saul, 462 F. Supp. 3d 137, 146 (D. Conn. 2020).

4

> Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity" by the ALJ to enable a reviewing court "to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The "ALJ is free to accept or reject" the testimony of any witness, but "[a] finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Leslie H. L. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00150(SALM), 2021 WL 5937649, at *2 (D. Conn. Dec. 16, 2021) (citation and quotation marks omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to

5

determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual meeting certain requirements who is under a disability is entitled to disability insurance benefits. <u>See</u> 42 U.S.C. §423(a)(1).

For the Social Security Administration ("SSA") to consider a claimant disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A); <u>see also</u> 20 C.F.R. §404.1520(c) (requiring that an "impairment or combination of impairments ... significantly limit[] ... physical or mental ability to do basic work

activities[]" to be considered "severe").

There is a familiar five-step analysis used to determine whether a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider [her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

Through the fourth step, the claimant carries the burdens of production and persuasion, but if the

analysis proceeds to the fifth step, there is a limited
shift in the burden of proof and the Commissioner is
obligated to demonstrate that jobs exist in the national
or local economies that the claimant can perform given
[her] residual functional capacity.

Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum.
Servs., 360 F. App'x 240, 243 (2d Cir. 2010); see also Poupore
v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The
residual functional capacity ("RFC") is "the most" a person is
still capable of doing despite limitations resulting from her or
his physical and mental impairments. 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1)
the objective medical facts; (2) diagnoses or medical opinions
based on such facts; (3) subjective evidence of pain or
disability testified to by the claimant or others; and (4) the
claimant's educational background, age, and work experience."
Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).
"[E]ligibility for benefits is to be determined in light of the
fact that the Social Security Act is a remedial statute to be
broadly construed and liberally applied." Id. (citation and
quotation marks omitted).

IV.  **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ
concluded "that the claimant was not disabled prior to August 8,
2018, but became disabled on that date and continued to be

8

disabled through March 18, 2019, the date of death."[5] Tr. 12.

At step one, the ALJ found that the claimant "did not engage in substantial gainful activity since the alleged onset date[.]" Tr. 14. At step two, the ALJ found that "[s]ince the alleged onset date of disability, January 21, 2017, the claimant had the following severe impairments: diabetes mellitus, anxiety disorder, and pancreatitis and since November 2018, malnutrition[.]" Id.

At step three, the ALJ determined that "[s]ince January 21, 2017, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 15. The ALJ specifically considered Listing 9.00 (endocrine disorders) and Listing 12.06 (anxiety and obsessive-compulsive disorders). See id.

Before moving on to step four, the ALJ found:

---

[5] A claimant seeking DIB for a period of disability must, in addition to presenting evidence of her disability, also satisfy the "insured status" requirements of the Act. 42 U.S.C. §423(c). To be entitled to benefits, plaintiff must demonstrate that the claimant was disabled prior to the expiration of the claimant's insured status, i.e., as of her date last insured. See Pratts v. Chater, 94 F.3d 34, 35-36 (2d Cir. 1996); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 20 C.F.R. §§404.130, 404.131, 404.315(a), 404.320(b). The claimant's date last insured is December 31, 2020. See Tr. 88. Accordingly, and as acknowledged by the ALJ, the relevant time period under consideration is the alleged onset date of January 21, 2017, through March 18, 2019, the date of the claimant's death. See Tr. 24.

> [P]rior to August 8, 2018, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except the claimant was limited to occasionally climbing, balancing, stooping, kneeling, crouching or crawling. Additionally, the claimant was limited to completing only simple, routine and repetitive tasks over the course of a normal workday, and was unable to do work that was directly with the public. The claimant was further limited to work activity in a predictable work setting.

Tr. 16.

> However, the ALJ also found:

> [B]eginning on August 8, 2018, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except the claimant was limited to occasionally climbing, balancing, stooping, kneeling, crouching or crawling. Additionally, the claimant was limited to completing only simple, routine and repetitive tasks over the course of a normal workday, and was unable to do work that was directly with the public. The claimant was further limited to work activity in a predictable work setting. Lastly, the claimant would be absent from work more than one day per month.

Tr. 19-20. The two RFC findings differ only in the addition of the final restriction, that "the claimant would be absent from work more than one day per month." Tr. 20.

At step four, the ALJ concluded that "[s]ince January 21, 2017, the claimant had been unable to perform any past relevant work[.]" Tr. 21.

At step five, "considering the claimant's age, education, work experience, and residual functional capacity," Tr. 22, the ALJ found that prior to August 8, 2018, the claimant could

perform the jobs of dress clerk, table worker, and touch up screener. See Tr. 23. However, the ALJ found that "[b]eginning on August 8, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant" would have been able to perform. Id.

## V.   **DISCUSSION**

Plaintiff contests the ALJ's determination that the claimant was not disabled under the Social Security Act for "any period of time from January 21, 2017 through August 7, 2018." Tr. 24; see also Doc. #22-1 at 2. Specifically, plaintiff asserts: (1) "The ALJ erred in his evaluation under the Listings[,]" Doc. #22-1 at 7 (capitalization altered); and (2) "The ALJ erred in his RFC description[,]" id. at 11 (capitalization altered), when he failed to "incorporate the more restrictive portions" of certain medical opinions into the claimant's non-exertional RFC description, instead "rel[ying] just on the less restrictive portions of these opinions." Id. at 12-13.[6]

---

[6] The introduction to plaintiff's motion states: "[T]he Commissioner's ALJ: 1) did not properly evaluate [the claimant's] conditions under the Listing of Impairments; 2) overlooked relevant portions of 'persuasive' opinion evidence; and 3) composed an incomplete Residual Functional Capacity (RFC) description." Doc. #22-1 at 2-3. However, the body of plaintiff's motion combines the arguments that the ALJ "composed an incomplete" RFC analysis and "overlooked relevant portions of

**A.    The ALJ's Step Three Findings**

Plaintiff asserts that the ALJ "did not properly evaluate [the claimant's] conditions under the Listing of Impairments[.]" Id. at 2-3. Plaintiff does not challenge the ALJ's evaluation of the claimant's physical impairments. Rather, plaintiff contends that the ALJ failed to properly evaluate the claimant's conditions under the listing of impairments addressing "Mental Disorders," 20 C.F.R. §Pt. 404, Subpt. P, App. 1, Listing 12.00. See id. at 7-10.

"The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability. The regulations also provide for a finding of such a disability per se if an individual has an impairment that is 'equal to' a listed impairment." DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citations omitted); see also 20 C.F.R. §404.1520(d). Plaintiff bears the burden of establishing that the claimant's conditions satisfy a listing. See Conetta v. Berryhill, 365 F. Supp. 3d 383, 396 (S.D.N.Y. 2019). "To show that [the claimant] meets the criteria, [plaintiff] must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory

---

'persuasive' opinion evidence[.]" Id. at 3. Accordingly, the Court considers these arguments together.

diagnostic techniques." Id. (citation and quotation marks omitted). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." Tyrone P. v. Saul, No. 3:20CV00112(SALM), 2021 WL 288788, at *8 (D. Conn. Jan. 28, 2021) (citation and quotation marks omitted).

Plaintiff argues that the ALJ "erred in his evaluation under the Listings" in two ways. Doc. #22-1 at 7 (capitalization altered). First, plaintiff asserts: "Because [the claimant's] mental impairments stem primarily from her blood sugar spikes, this case is most accurately evaluated under Listing 12.02, under neurocognitive disorders, as opposed to psychiatric disorder." Id. at 10. Second, plaintiff appears to argue that the ALJ's determination that the claimant's mental disorders did not meet any Listing was not supported by substantial evidence because the claimant's "January 2017-August 2018 ability to adapt and manage herself was extremely impaired." Id. (footnote omitted). Both arguments fail.

### 1.   The ALJ's Evaluation under Listing 12.06

Plaintiff asserts that the ALJ failed to evaluate the claimant's mental impairments under the proper listing. See id. at 10. Specifically, plaintiff contends that "[b]ecause most of [the claimant's] mental impairments appear to result from hyperglycemia and ketoacidosis, Listing 12.02 Neurocognitive

13

Disorders is most appropriate, as the 9.00 listings direct the ALJ to evaluate diabetic complications under the affected body system." Id. at 8 (citation, quotation marks, and footnote omitted). Because the ALJ did not explicitly consider whether the claimant met Listing 12.02's criteria, plaintiff contends that "[t]his case should be remanded for a review under the proper Listing." Id. at 10.

The ALJ's failure to explicitly evaluate whether the claimant was disabled under Listing 12.02 amounts, at most, to harmless error. The ALJ evaluated the claimant's impairments under Listing 12.06. See Tr. 15-16. In order to establish disability under Listing 12.02 or Listing 12.06, the claimant must satisfy either Paragraph A and B or Paragraph A and C of the respective Listing. Compare 20 C.F.R. §Pt. 404, Subpt. P, App. 1, Listing 12.02 with id. at Listing 12.06. While Paragraph A in Listing 12.06 differs from Paragraph A in Listing 12.02, Listing 12.02 and Listing 12.06 have identical requirements under Paragraph B and Paragraph C. See id.

Listing 12.02 provides that a claimant's disability under the Listing is "satisfied by [Paragraph] A and B, or [Paragraph] A and C[.]" 20 C.F.R. §Pt. 404, Subpt. P, App. 1, Listing 12.02. Paragraphs B and C of Listing 12.02 require:

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

14

1. Understand, remember, or apply information (see 12.00E1).

2. Interact with others (see 12.00E2).

3. Concentrate, persist, or maintain pace (see 12.00E3).

4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

Id.

Similarly, Listing 12.06 provides that a claimant's disability under the Listing is "satisfied by [Paragraph] A and B, or [Paragraph] A and C[.]" 20 C.F.R. §Pt. 404, Subpt. P, App. 1, Listing 12.06. Paragraphs B and C under Listing 12.06 require:

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).

> 2. Interact with others (see 12.00E2).
>
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
>
> 4. Adapt or manage oneself (see 12.00E4).
>
> OR
>
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
>> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>>
>> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

Id.

The claimant is therefore required to meet identical criteria under Paragraph B or Paragraph C in order to satisfy the requirements of either Listing 12.02 or Listing 12.06. The ALJ determined that the claimant did not satisfy either Paragraph B or C under Listing 12.06. See Tr. 15-16. "Because disability under Listing 12.02 also requires [the claimant to] meet the criteria under paragraph B or C, the ALJ's failure to specifically analyze [the claimant's] medical condition according [to] Listing 12.02 is harmless error." Jackson B. v. Kijakazi, No. 20CV00495(LGF), 2021 WL 4225652, at *5 (W.D.N.Y.

16

Sept. 16, 2021); <u>see</u> <u>also</u> <u>Zabala v. Astrue</u>, 595 F.3d 402, 408
(2d Cir. 2010) (denying remand where application of the correct
legal principles could only lead to the same conclusion that the
claimant was not disabled). Remand is not justified on this
basis.

2.   <u>The ALJ's Step Three Finding was Supported by
         Substantial Evidence</u>

The ALJ's finding that the claimant did not satisfy either
Paragraph B or Paragraph C under Listing 12.06 was supported by
substantial evidence. Plaintiff does not contend that the
claimant met the criteria set forth under Paragraph C of Listing
12.02 and Listing 12.06. Instead, plaintiff argues exclusively
that the claimant was disabled under Paragraph B of those
Listings. <u>See</u> Doc. #22-1 at 10. In order to satisfy Paragraph B
of Listing 12.02 and Listing 12.06, the claimant must have
"[e]xtreme limitation of one, or marked limitation of two, of
the following areas of mental functioning: 1. Understand,
remember, or apply information[;] 2. Interact with others[;] 3.
Concentrate, persist, or maintain pace[;] 4. Adapt or manage
oneself[.]" 20 C.F.R. §Pt. 404, Subpt. P, App. 1, Listing 12.02,
Listing 12.06 (citations omitted).

In conducting this evaluation, the ALJ examines "the
effects of [the claimant's] mental disorder ... based on a five-
point rating scale consisting of none, mild, moderate, marked,

17

and extreme limitation." 20 C.F.R. §Pt. 404, Subpt. P, App. 1. A, Listing 12.00(F). A claimant has no limitation when she is "able to function in [the relevant] area independently, appropriately, effectively, and on a sustained basis." Id. A claimant has a mild limitation where "functioning in [the relevant] area independently, appropriately, effectively, and on a sustained basis is slightly limited." Id. A moderate limitation exists where a claimant's "functioning in [the relevant] area independently, appropriately, effectively, and on a sustained basis is fair." Id. A marked limitation occurs where a claimant's "functioning in [the relevant] area independently, appropriately, effectively, and on a sustained basis is seriously limited." Id. Finally, a claimant has an extreme limitation in a given area where she is "not able to function in [the relevant] area independently, appropriately, effectively, and on a sustained basis." Id.

In arguing that the claimant was disabled under Listing 12.02, plaintiff focuses solely on the claimant's alleged limitations in her ability to adapt or manage herself. See Doc. #22-1 at 10. To satisfy Paragraph B of Listing 12.02 or Listing 12.06 based upon limitation in one area, the claimant must establish that the limitation is extreme. See 20 C.F.R. §Pt. 404, Subpt. P, App. 1, Listing 12.02; see also 20 C.F.R. §Pt. 404, Subpt. P, App. 1, Listing 12.06. Thus, to meet the criteria

set forth in Paragraph B of Listing 12.02 or Listing 12.06 based upon her limited ability to adapt or manage herself, the claimant was required to have "essentially no functioning at all" in this area. Bonilla Mojica v. Berryhill, 397 F. Supp. 3d 513, 531 (S.D.N.Y. 2019).

The regulations define the ability to adapt or manage oneself as follows:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. §Pt. 404, Subpt. P, App. 1, Listing 12.00(E).

The ALJ found:

> As for adapting or managing oneself, the claimant had experienced a mild limitation before the established onset date. The claimant reported difficulties with performing personal care, but mostly due to limitations caused by her physical impairments. However, the claimant reported that she was able to prepare simple meals independently and occasionally could perform household chores, like a load of laundry.

Tr. 16 (citations to the record omitted).

Plaintiff challenges this finding, arguing that "[the claimant's] January 2017-August 2018 ability to adapt and manage

herself was extremely impaired." Doc. #22-1 at 10 (footnote omitted). In support of this argument, plaintiff asserts that the claimant: (1) suffered from "chronically occurring swings between hyperglycemic episodes, and low blood sugar, caus[ing] her to have an impairment in executive functioning," id. at 8; (2) was "unable to both respond to demands and to be aware of normal hazards and tak[e] appropriate precautions[,]" id. at 10; (3) was "unable to maintain personal hygiene ... [and] struggle[d] to do self-care and shower[ed] once weekly[,]" id.; and (4) was "lethargic and losing weight[,] ... had no energy and was depressed[,] ... became sweaty, shaking, and anxious[,] ... was urinating all the time and sometimes her body hurt and she wouldn't get out of bed [at] all[.]" Id.

However, "[t]o the extent there is evidence supporting plaintiff's position, that is not the question to be decided. Rather, the question is whether substantial evidence supports the ALJ's decision." Gentile v. Saul, No. 3:19CV01479(SALM), 2020 WL 5757656, at *12 (D. Conn. Sept. 28, 2020).

Substantial evidence supports the ALJ's finding that the claimant had only a mild limitation in the ability to adapt and manage herself from January 21, 2017, through August 7, 2018. This finding was supported by state agency medical consultant Robert DeCarli, who specifically opined in his July 25, 2018, medical evaluation that the claimant had only a "Mild"

limitation in the ability to adapt or manage herself. Tr. 97. The ALJ specifically noted this finding when discussing Dr. DeCarli's opinion, stating: "[Dr. DeCarli] assessed the medical record and opined that the psychiatric impairment caused ... mild limitations in the ability to adapt or manage oneself[.]" Tr. 19 (citing Tr. 97). "State agency medical and psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation and these opinions may constitute substantial evidence if they are consistent with the record as a whole." Lumpkin v. Saul, No. 3:19CV01159(WIG), 2020 WL 897305, at *6 (D. Conn. Feb. 25, 2020) (citation and quotation marks omitted).

Plaintiff does not argue that the ALJ improperly relied on Dr. DeCarli's opinion, and the Court finds that Dr. DeCarli's opinion is consistent with the record as a whole. Indeed, the claimant's July 23, 2018, Adult Function Report indicates that she: (1) did not need special reminders to take care of personal needs and grooming, see Tr. 261; (2) independently prepared simple meals "daily -- once or twice[,]" id.; (3) was capable of driving a car and went shopping for medications and groceries once per week, see Tr. 262, 263; and (4) engaged in activities including "reading, watching TV, [and] try to walk dog." Tr. 263. Such activities provide further support for the ALJ's finding that the claimant's ability to adapt or manage herself

was only mildly limited. See Jeannette T. v. Kijakazi, No. 3:21CV00133(SDV), 2022 WL 1115101, at *7 (D. Conn. Apr. 14, 2022) (holding that claimant's ability to adapt or manage herself was mildly limited where, inter alia, she could "independently complete her activities of daily living including cooking, paying bills, and driving[]").

The claimant's daily activities, together with Dr. DeCarli's opinion, provide substantial evidence in support of the ALJ's finding that the claimant's ability to adapt or manage herself was mildly limited from January 21, 2017, through August 7, 2018.

Furthermore, even if the ALJ had erred in finding that the claimant had only a mild limitation in this area, any such error would be harmless, because there is simply no evidence that the claimant had an extreme limitation. To satisfy Listing 12.02 or Listing 12.06 based on impairment in the claimant's ability to adapt or manage herself alone, the impairment would have to be extreme -- not merely moderate or marked. In other words, the plaintiff would have to show that the claimant had "essentially no functioning at all" in that area. Bonilla Mojica, 397 F. Supp. 3d at 531. But the medical opinions of record, including Dr. DeCarli's opinion, and the record as a whole, including claimant's reported activities of daily living such as driving and independently preparing meals, do not support such a

finding.

Plaintiff has pointed to evidence that the claimant "struggle[d] to do self-care[,] shower[ed] once weekly[,]" Doc. #22-1 at 10 (citing Tr. 487), "had no energy and was depressed." Doc. #22-1 at 10 (citing Tr. 70). Such evidence might support a finding that the claimant had a moderate -- or even marked -- limitation in the ability to adapt or manage herself. However, a marked limitation in just <u>one</u> area is insufficient to satisfy Paragraph B of Listing 12.02 or Listing 12.06. <u>See</u> 20 C.F.R. §Pt. 404, Subpt. P, App. 1, Listing 12.02; <u>see also</u> 20 C.F.R. §Pt. 404, Subpt. P, App. 1, Listing 12.06. Plaintiff does not argue that the claimant suffered a marked limitation in any other area. As a result, even if the claimant had a <u>marked</u> limitation in this area, such a limitation would be insufficient to support a finding of disability under Listing 12.02 or Listing 12.06. <u>See</u> <u>White o/b/o T.R.W. v. Berryhill</u>, No. 17CV06367(MWP), 2019 WL 1367382, at *8 (W.D.N.Y. Mar. 26, 2019) ("Moreover, even if [the claimant] could be said to suffer from a 'marked' limitation in this domain, that would still be insufficient to result in a finding of disability. Specifically, [plaintiff] has not shown that the ALJ committed error in finding less than marked or no limitations in the remaining domains[.]"); <u>Lindner ex rel. N.M.R. v. Colvin</u>, No. 1:13CV01058(MAT), 2015 WL 5156877, at *7 (W.D.N.Y. Sept. 2,

2015) ("[E]ven if [the claimant] suffered a marked limitation in this domain, it would not change the outcome of the ALJ's decision because she did not suffer marked limitations in any of the remaining domains, and the evidence does not support a finding of an extreme limitation in the domain of caring for yourself."). Therefore, the ALJ's finding that the claimant had a mild limitation in the ability to adapt or manage herself amounts, at most, to harmless error. Remand is not justified on this basis.

**B.   The ALJ's RFC Determination**

Plaintiff contends that the ALJ "erred in his RFC Description" for the period from January 21, 2017, through August 7, 2018. Doc. #22-1 at 11 (capitalization altered). Plaintiff does not challenge the exertional restrictions set forth in the ALJ's RFC determination. Rather, plaintiff asserts only that the ALJ failed to properly evaluate the claimant's non-exertional limitations when determining the claimant's RFC from January 21, 2017, through August 7, 2018.

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §404.1545(a)(1). The RFC is assessed "based on all of the relevant medical and other evidence." 20 C.F.R. §404.1545(a)(3). "An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other

24

limitations which could interfere with work activities on a regular and continuing basis." Pardee v. Astrue, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009).

The ALJ's RFC determination for the period prior to August 8, 2018, states, in relevant part, that the claimant had the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a), except the claimant was limited to occasionally climbing, balancing, stooping, kneeling, crouching or crawling. Additionally, the claimant was limited to completing only simple, routine and repetitive tasks over the course of a normal workday, and was unable to do work that was directly with the public. The claimant was further limited to work activity in a predictable work setting.

Tr. 16.

Plaintiff appears to argue that this finding was not supported by substantial evidence because "[t]he ALJ should have incorporated the opinions of the treating and reviewing medical professionals in this case, but despite reviewing multiple opinions, the ALJ excluded large relevant portions from [the claimant's] RFC description." Doc. #22-1 at 11. Specifically, plaintiff contends: "The ALJ found the opinion of state agency reviewer Dr. Robert DeCarli 'persuasive' but only discussed the less restrictive portions of his opinions[,]" id., and "the ALJ picked out the least restrictive portions of APRN, Carol Pisani's opinion[.]" Id. at 12. The Court disagrees.

1.   Dr. Robert DeCarli's Opinion

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the "ALJ found the opinion of state agency reviewer Dr. Robert DeCarli 'persuasive' but only discussed the less restrictive portions of his opinions[.]" Doc. #22-1 at 11.[7]

Dr. DeCarli issued a medical evaluation on July 25, 2018. See Tr. 97, 100-02. Dr. DeCarli opined that the claimant was either not limited or "[n]ot significantly limited" in a number of relevant areas. Tr. 101-02. For example, Dr. DeCarli determined that the claimant had no "understanding and memory limitations[.]" Tr. 101. Furthermore, Dr. DeCarli opined that the claimant's abilities to "sustain an ordinary routine without special supervision" and "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" were "[n]ot significantly limited[.]" Id. When evaluating the claimant's residual functional capacity, he did, however, find that the claimant was "moderately limited" in three areas:

First, Dr. DeCarli opined that the claimant had a

---

[7] Plaintiff refers to Dr. DeCarli's "opinions" in the plural. However, each of Dr. DeCarli's opinions were submitted as part of the same medical evaluation that was completed on July 25, 2018. See Tr. 97, 100-02. As a result, the Court refers to Dr. DeCarli's medical evaluation as a single opinion throughout this Ruling.

moderately limited ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 101. In making this assessment, Dr. DeCarli stated that "the clmnt can do simple work for 2hr periods in an 8hr day wioth adequate attention, concentration and pace she could have occasional problems [less than 1/3 of the time] with prolongedconcentration and sustained pace." Id. (sic) (capitalization altered).

Second, Dr. DeCarli opined that the claimant's "ability to interact appropriately with the general public" was "[m]oderately limited[.]" Id. Specifically, Dr. DeCarli stated: "The clmnt can engage in typical interactions with coworkers and supervisors while completing RRT that does not require teamwork or collaborative efforts. She would do best in a job away from the public." Tr. 102 (sic) (capitalization altered).

Third, Dr. DeCarli found that the claimant's "ability to respond appropriately to changes in the work setting[]" was moderately limited. Id. In making that determination, Dr. DeCarli opined: "the clmnt can travel, recognize hazards and set simple goals. She would do best in an unchanging job." Id. (sic) (capitalization altered).

The ALJ found Dr. DeCarli's opinion to be "persuasive." Tr. 19. In making that finding, the ALJ stated:

27

> [O]n July 25, 2018, state agency medical expert Robert
> Decarli, Psy.D., assessed the medical record and opined
> that the psychiatric impairment caused mild limitations
> in understanding, remembering or applying information
> and moderate limitations in the ability to interact with
> others. Additionally, the impairment caused moderate
> limitation in the ability to concentrate, persist or
> maintain pace, and mild limitations in the ability to
> adapt or manage oneself. Furthermore, the claimant had
> no limitations in the area of understanding and memory,
> and generally no significant limitations in the area of
> sustained concentration and persistence, other than a
> moderate limitation in the specific ability to maintain
> attention and concentration for extended periods. In the
> area of social interaction, the claimant generally had
> no significant limitations other than a moderate
> limitation in the specific ability to interact
> appropriately with the general public. The undersigned
> finds these opinions are persuasive, as they are
> generally consistent with the overall medical evidence
> of record, as detailed above.

Tr. 19 (citations to the record omitted).

Plaintiff asserts that "[t]he ALJ was silent on more
restrictive portions of Dr. DeCarli's opinion and did not
include them in [the claimant's] RFC description." Doc. #22-1 at
12. Specifically, plaintiff asserts that the ALJ did not
adequately consider Dr. DeCarli's statements that the claimant:
(1) "is moderately limited in the ability to complete a normal
workday and workweek without interruptions from psychologically
based symptoms and to perform at a consistent pace without an
unreasonable number and length of rest periods[,]" id.; and (2)
"'could have occasional problems [less than 1/3 time] with
prolonged concentrating and sustained pace[.]'" Id. (quoting Tr.
101).

Despite plaintiff's argument to the contrary, however, the ALJ expressly noted Dr. DeCarli's finding that the claimant had a "moderate limitation in the ability to concentrate, persist, or maintain pace[.]" Tr. 19. Furthermore, while plaintiff appears to argue that the ALJ failed to adequately account for this limitation in his RFC determination, "[t]he ALJ was not required to adopt every limitation" in Dr. DeCarli's opinion. Volpe v. Comm'r of Soc. Sec., No. 1:18CV01349(DB), 2020 WL 113489, at *4 (W.D.N.Y. Jan. 10, 2020); see also Michael M. v. Comm'r of Soc. Sec., No. 1:19CV01318(CJS), 2021 WL 1169190, at *8 (W.D.N.Y. Mar. 29, 2021) ("The fact that the ALJ did not adopt every single limitation in [the medical opinion] is not an indicator that []he impermissibly cherry-picked evidence that supported [his] RFC finding while ignoring evidence that did not.").

In any event, plaintiff has failed to explain how the ALJ's purported failure to adequately consider portions of Dr. DeCarli's opinion led to an error in his RFC determination. Dr. DeCarli did not opine that the claimant's issues with prolonged concentration and sustained pace required additional restrictions, and plaintiff does not discuss what additional restrictions he believes should have been included in the claimant's RFC description. Instead, plaintiff asserts, in conclusory fashion, that "the ALJ's RFC description does not

accurately portray [the claimant's] actual abilities prior to August 8, 2018." Doc. #22-1 at 13.

Plaintiff does not identify the additional RFC restrictions that he believes Dr. DeCarli's opinion required. During the January 23, 2020, hearing before the ALJ, the Vocational Expert opined: "If an individual were off task in excess of 10% of the time on a continuing and ongoing basis, that would preclude all work, unemployable." Tr. 82. Construing plaintiff's arguments extremely generously, the Court presumes that plaintiff contends that the claimant would be off task in excess of ten percent of the workday due to her moderate limitations with prolonged concentration and sustained pace, and that such a restriction should have been included in the RFC.

However, to establish that the ALJ erred in failing to account for extra breaks in his RFC determination, "[t]he plaintiff cannot rely on difficulties in concentration and sustained pace; he must provide evidence that [the claimant] would be off task ten percent or more of the time." Trunk v. Comm'r of Soc. Sec., No. 3:19CV00216(RMS), 2020 WL 582264, at *10 (D. Conn. Feb. 6, 2020); see also Burke v. Berryhill, No. 3:17CV00537(AWT), 2018 WL 4462364, at *2 (D. Conn. Sept. 18, 2018). Plaintiff has not pointed to any such evidence. To the contrary, Dr. DeCarli's opinion merely supports the proposition that the claimant would be limited to completing "simple work

for 2hr periods in an 8hr day wioth adequate attention[.]" Tr.
101 (sic). "If a job provides normal work breaks and meal
periods, an eight-hour workday would be split into approximately
two hour periods. Such a schedule would allow for simple work to
be performed for two-hour periods in an eight-hour day for
someone with occasional problems with prolonged concentration
and sustained pace." Trunk, 2020 WL 582264, at *10 (citations
and quotation marks omitted). Plaintiff has thus failed to point
to any portion of Dr. DeCarli's opinion supporting a need for
additional restrictions in the claimant's RFC. There was no
error on this point.

        2.   APRN Pisani

Plaintiff next asserts that the ALJ "erred in his RFC
description[,]" Doc. #22-1 at 10, because he "picked out the
least restrictive portions of APRN, Carol Pisani's opinion[.]"
Id. at 12.

APRN Pisani completed medical source statements on July 19,
2018, and January 26, 2019. See Tr. 486-90 (July 19, 2018,
statement); Tr. 880-886 (January 26, 2019, statement). Because
plaintiff challenges only the ALJ's RFC determination for the
period prior to August 8, 2018, the Court addresses only APRN
Pisani's July 19, 2018, medical source statement. APRN Pisani's
July 19, 2018, statement opined, in relevant part, that the
claimant "struggles to do self care" and "showers once

31

weekly[.]" Tr. 487. Consistent with that finding, APRN Pisani determined that the claimant had a reduced ability to: (1) take care of personal hygiene; (2) care for physical needs; and (3) use appropriate coping skills. See Tr. 488.

APRN Pisani also considered the claimant's "Task Performance." Tr. 489. In doing so, APRN Pisani found that the claimant had an "excellent" ability to: (1) carry out single-step instructions; (2) change from one simple task to another; and (3) perform basic activities at a reasonable pace. See id. Despite these findings, however, APRN Pisani stated that the claimant had a reduced ability to focus "long enough to finish simple activities or tasks[,]" and "tends to be avoidant of tasks i.e. won't open mail due to bills. Wont answer phone." Id. (sic).

The ALJ found APRN Pisani's opinion to have "some persuasiveness[.]" Tr. 18. Specifically, the ALJ stated:

> On July 19, 2018, nurse practitioner Carol J. Pisani completed a medical source statement in which he opined that inter alia, in the area of social interactions, the claimant had reduced ability for interacting appropriately with others and asking questions or requesting assistance. Additionally, the claimant had better than average ability respecting or responding appropriately to others in authority, and an excellent ability getting along with others without distracting them or exhibiting behavioral extremes. However, NP Pisani indicated that the claimant was socially withdrawing and had little motivation to leave the house. In the area of task performance, the claimant had excellent ability carrying out single-step instructions, changing from one simple task to another, and performing

> basic activities at a reasonable pace. Furthermore, the claimant had average ability with carrying out multi-step instructions and a reduced ability with focusing long enough to finish simple activities or tasks and in the ability to persist in simple activities without interruption from symptoms. In making a disability determination, the undersigned finds this opinion has some persuasiveness, as it is generally consistent with the treatment notes, which indicate that the claimant generally retained mental stability and improvements with medication compliance.

Tr. 18.

Plaintiff asserts that the ALJ erred in his RFC determination because he "ignored the portions of the opinion in which Nurse Pisani described that [the claimant] struggles to do self-care and showers only once weekly, and is avoidant of simple tasks like opening the mail[.]" Doc. #22-1 at 12. Plaintiff's argument is belied by the record. The ALJ expressly considered the claimant's struggles with self-care throughout his decision. See, e.g., Tr. 16 (noting that the claimant "reported difficulties with performing personal care, but mostly due to limitations caused by her physical impairments"); Tr. 17 (noting that the claimant "had a history of anxiety and depression, low motivation, lack of self-care and seldom left the house"). Moreover, the ALJ explicitly noted APRN Pisani's finding that the claimant had "reduced ability with focusing long enough to finish simple activities or tasks and in the ability to persist in simple activities without interruption from symptoms[.]" Tr. 18.

33

Plaintiff's argument thus amounts to an attack on the ALJ for failing to specifically cite APRN Pisani's statements that the claimant struggled to open the mail and showered once weekly. However, "an ALJ is not required to discuss all the evidence submitted, and his failure to cite specific evidence does not indicate that it was not considered." Joey A. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00244(SALM), 2022 WL 855584, at *8 (D. Conn. Mar. 23, 2022) (citation and quotation marks omitted). There was no error on this point.

## VI.  CONCLUSION

For the reasons set forth herein, plaintiff's Motion for an Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing [**Doc. #22**] is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #28**] is **GRANTED.**

It is so ordered at Bridgeport, Connecticut, this 18th day of July, 2022.

                                    /s/
                                    _____
                                    HON. SARAH A. L. MERRIAM
                                    UNITED STATES DISTRICT JUDGE